UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANGELA M. CONNOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:20-CV-183-HAB |
| | ) |
| PROFESSIONAL MEDICAL BILLING, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

When COVID-19 hit, Plaintiff, like most parents of young children, faced the unenviable task of balancing work with childcare. After finding telework unworkable, Plaintiff requested paid leave under the Families First COVID Relief Act ("FFCRA"). Defendant, Plaintiff's employer, denied that leave relying on the then-in-effect Department of Labor guidance. Still requiring leave, Plaintiff elected for unpaid leave under Defendant's leave policy. When that leave ended, Plaintiff was returned to a position with the same pay rate, employee benefits, and seniority. But believing that she was wrongly denied leave under the FFCRA and the FMLA, Plaintiff filed suit seeking damages.

Now before the Court is Defendant's motion for summary judgment (ECF No. 18). That motion has been fully briefed. (*See* ECF Nos. 28, 30). The parties have submitted additional briefs, at the Court's request, on the issue of Plaintiff's eligibility under the FFCRA. (ECF Nos. 32, 35, 36). Having reviewed the briefing and the relevant law, the Court finds that summary judgment should be granted.

I.      **Factual Background**

Defendant describes itself as a "full-service medical reimbursement management company." (ECF No. 19 at 2). Plaintiff has worked for Defendant since February 2019. Plaintiff is also a single parent of a young daughter.

For the first four months of her employment, Plaintiff was a Customer Service Representative, mainly taking patient phone calls. She was then transferred to the role of Medical Billing Claim Follow-up/AR Representative, responsible for completing claim reports. From the beginning of her employment through April 2020, Plaintiff had no disciplinary issues other than two coachings for attendance.

In early 2020, the COVID-19 pandemic began. In March 2020, Sherri Will ("Will"), Defendant's Vice-President of Operations, emailed employees stating that telework would be available on a limited basis. Even so, Plaintiff began working from home that month.

In early April 2020, Will emailed Plaintiff to check on the status of Plaintiff's work. Will had noticed that two accounts had been removed from Plaintiff's work list. Plaintiff confirmed that the accounts had been removed, noting that work had been "sporadic." Yet Plaintiff provided Will with a copy of a report she had completed. Will responded, questioning both the volume of Plaintiff's work and Will's ability to confirm that work had been completed.

The next day, Plaintiff's supervisor, Jennifer Ladd, emailed all employees in Plaintiff's department asking them to come into the office once a week. Plaintiff responded that she could not, stating that no one could watch her daughter (whose school had been closed because of the pandemic) while Plaintiff was at work. Instead, Plaintiff offered to do other work instead of coming in to answer phones.

Three days after Ladd's department-wide email, Plaintiff emailed Will asking to take leave under the FMLA. The language of the email, however, makes it clear the request is really for leave under the FFCRA. Plaintiff notes that her daughter's school and daycare have both closed, and that Plaintiff has had trouble working with her child at home. Will responded, stating that she would forward leave forms and that Plaintiff would need to provide proof that the daughter's daycare was closed. Plaintiff confirmed that she had requested proof of the closure and would provide it to Will.

Later that same day, Will, Ladd, and Linda Pearce, Defendant's President, called Plaintiff to discuss the request for leave. Plaintiff was informed that she was not eligible for paid leave under the FFCRA. Instead, Plaintiff was directed to file a request for unpaid leave. Finally, Pearce disclosed that she had learned about certain performance issues related to Plaintiff. While the performance issues were discussed, no further disciplinary action was taken.

The next day, Pearce and Plaintiff exchanged emails about Plaintiff's leave request. Pearce began the exchange by asking why Plaintiff could no longer telework. Plaintiff responded with a long email, noting the problems she was having balancing work with parenting duties. At the end of her email, Plaintiff stated, "I had to have a heart to heart with myself and make a very tough decision to still take the unpaid FMLA for my daughter." (ECF No. 19-2). Pearce then reiterated Defendant's position that Plaintiff was not eligible for paid leave under the FMLA or the FFCRA. Pearce offered Plaintiff unpaid leave starting that day, April 14, 2020. Pearce made clear that Defendant would not hold Plaintiff's job or guarantee that a job would be available when Plaintiff sought to return to work. In a later email, Pearce clarified to Plaintiff that the reason she was not eligible for paid leave was that she was "exempt" because Defendant was "an essential business."

3

The leave discussions did not go the way Plaintiff envisioned. So, later on the 14th, Plaintiff emailed Pearce to say that she felt she was "being punished." Plaintiff explained that she believed she was entitled to paid leave "due to childcare circumstances" and told Pearce that she had contacted an attorney. Pearce responded by asking Plaintiff for a formal request for unpaid leave, including a start and end date. Plaintiff then stated that she would have the information to Pearce "as soon as possible." Plaintiff submitted the formal request for, and Defendant granted, unpaid leave. That leave began April 13 or April 20, depending on which party you ask.

On April 21, 2020, Plaintiff disclosed more information about her daughter in support of her request for leave. Plaintiff disclosed, for the first time, that her daughter was having "serious behavior issues," and had been diagnosed with ADHD, anxiety disorder, impulsive behavior, and sleep disturbances. Plaintiff believed that this qualified her for paid leave under the FFCRA. Pearce responded, this time stating that Plaintiff was not eligible for paid leave because she had been offered, and declined, telework options. Pearce then reiterated Defendant's position that Plaintiff was on an unpaid leave of absence.

By late May 2020, Plaintiff was ready to return to work. She emailed Pearce and asked if a job would be available on June 15, when Plaintiff's daughter could resume daycare. Pearce stated that Plaintiff's job was no longer available but offered a job in customer service. When Plaintiff stated that the schedule for that job would not work, Will agreed to change the schedule to accommodate Plaintiff's parenting needs. Will assured Plaintiff that the new job would be at the same pay rate as her former position. Indeed, the parties agree that Plaintiff resumed work with the same pay rate, employee benefits, and seniority. Plaintiff is still employed by Defendant and has been promoted in the meantime.

## II. Legal Discussion

### A. *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in its favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

5

**B.**     *Defendant is not Liable for a Violation of the FFCRA*

Plaintiff first asserts interference and retaliation in violation of the FFCRA. The FFCRA is an amendment to the FMLA, so the analysis is the same as a claim under the FMLA. *See Figueroa Collazo v. Ferrovial Constr. PR, LLC*, 2021 WL 4482268, at *5 (D.P.R. Sept. 30, 2021) ("The acts that are prohibited as to FMLA, are equally prohibited as to [FFCRA], such as, interference with the exercise of rights, discrimination, and interference of proceedings."). To establish such a claim, an employee must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she had a right to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).

The FFCRA includes both the Emergency Family and Medical Leave Expansion Act ("EFMLEA") and the Emergency Paid Sick Leave Act ("EPSLA"). *See* Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020). The EPSLA requires covered employers to provide paid sick leave to employees who meet one of these conditions:

> (1) The employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19.
>
> (2) The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19.
>
> (3) The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis.
>
> (4) The employee is caring for an individual who is subject to an order as described in subparagraph (1) or has been advised as described in paragraph (2).
>
> (5) The employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions.

>  (6) The employee is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor.

FFCRA § 5102. But there is an exception for "an employee who is a health care provider or an emergency responder." *Id*. The FFCRA specifies that "health care provider" has the same definition as in the FMLA. FFCRA § 5110 (citing 29 U.S.C. § 2611). The FMLA defines "health care provider" as: "(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services." 29 U.S.C. § 2611. The FFCRA also includes a provision which allows the Secretary of Labor to issue regulations "to exclude certain health care providers and emergency responders from the definition of employee under section 5110(1) including by allowing the employer of such health care providers and emergency responders to opt out." FFCRA § 5111. Under this portion of the law, the Department of Labor issued a Final Rule in April 2020 which defines "health care provider" for the FFCRA as follows:

> anyone employed at any doctor's office, hospital, health care center, clinic, post-secondary educational institution offering health care instruction, medical school, local health department or agency, nursing facility, retirement facility, nursing home, home health care provider, any facility that performs laboratory or medical testing, pharmacy, or any similar institution, Employer, or entity. This includes any permanent or temporary institution, facility, location, or site where medical services are provided that are similar to such institutions.

85 Fed. Reg. 19,326, 19,351 (§ 826.25) (Apr. 6, 2020) ("April Rule").

Judge Oetken of the Southern District of New York struck down this definition in a challenge brought by the State of New York under the Administrative Procedure Act, finding that it conflicted with the FFCRA. *See New York v. United States Dep't of Lab.*, 477 F. Supp. 3d 1, 15 (S.D.N.Y. 2020). Then, the Department of Labor revised the definition of health care provider,

7

and the new Rule took effect on September 16, 2020. See 29 C.F.R. § 826.30 (effective September 16, 2020, through December 31, 2020) ("September Rule"). The revised rule provided:

> a health care provider is
>
> (A) Any Employee who is a health care provider under 29 CFR 825.102 and 825.125, or;
>
> (B) Any other Employee who is capable of providing health care services, meaning he or she is employed to provide diagnostic services, preventive services, treatment services, or other services that are integrated with and necessary to the provision of patient care and, if not provided, would adversely impact patient care.

*Id*.

The relevant facts all occurred between April 13, 2020, and June 15, 2020. So, the April Rule was in effect. But this does not mean that the April Rule governs this dispute. When an agency rule is vacated, as the April Rule was in *New York*, the vacatur restores the status quo before the invalid rule took effect. *See*, *e.g.*, *Nat'l Park Conservation Assn. v. Jewell*, 62 F. Supp. 3d 7, 21 (D.D.C. 2014). That means that, even though Defendant relied on the then-in-effect rule in determining Plaintiff's eligibility under the FFCRA, Plaintiff's actual eligibility was governed by the FFCRA's initial definition of "healthcare provider"; i.e., the definition from the FMLA. *See*, *e.g.*, *Martinez v. Aspen Dental Mgmt., Inc.*, 2022 WL 523559, at *11 (M.D. Fla. Feb. 22, 2022). And Defendant concedes that Plaintiff was not an exempt "healthcare provider" under the FMLA. (ECF No. 32 at 7). A strict application of the original-then-superseded-then-reinstated-by-vacatur rule mandates a finding that Defendant wrongly denied Plaintiff paid leave under the FFCRA.

Holding Defendant liable for not divining future judicial action seems awfully unfair. Defendant states as much in its supplemental briefing, arguing that liability under these facts violates its right to due process. (ECF No. 32 at 2-6). But the Court does not find the need to rely

8

on Constitutional principles to resolve this case. Instead, the Court finds that Congress has immunized precisely the kind of reliance that Defendant demonstrated here.

As part of the Portal-to-Portal Act of 1947, Congress enacted 29 U.S.C. § 259. That statute provides, in relevant part:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259(a). Thus, if an employer relies on an administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy in effect at the time of the challenged action, it cannot be liable for a claim under the Fair Labor Standards Act. *See* 29 C.F.R. § 790.17. The reliance-based immunity in § 259 has been expressly incorporated into other statutes, including the Age Discrimination in Employment Act. *See* 29 U.S.C. § 626(e) ("Section 259 of this title shall apply to actions under this chapter."). No such express incorporation can be found in the FMLA.

But that does not end the inquiry. As noted above, the entitlement to two weeks of paid sick leave under the FFCRA comes from the EPSLA. *See* FFCRA § 5102(a)(5). Failure to provide the required sick leave is enforceable under Section 5105 of the FFCRA. That Section states:

> **(a) Unpaid sick leave**.--An employer who violates section 5102 [of this note] shall--
>
> > **(1)** be considered to have failed to pay minimum wages in violation of section 6 of the Fair Labor Standards Act of 1938 (29 U.S.C. 206); and

9

>    **(2)**  be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. 216; 217) with respect to such violation.

FFCRA § 5105(a). Despite being an amendment to the FMLA, the statutory text is clear that a violation of the EPSLA, and in turn the FFCRA, is a violation of the FLSA's minimum wage requirements.

This conclusion is, admittedly, less straightforward when analyzing the EFMLEA. Unlike the EPSLA, the enforcement provisions for the EFMLEA are the same as the enforcement provisions in the FMLA. This means that Congress has not expressly incorporated the FLSA for violations of the EFMLEA.

That said, the Court still finds the Portal-to-Portal Act applicable to violations of the EFMLEA. The primary damages for a violation of the FMLA are lost wages. 29 U.S.A. § 2617(a)(1)(A)(i)(I). This is important given how the EFMLEA calculates wages owed. The first ten days of EFMLEA leave is unpaid. 29 U.S.C. § 2620(b)(1)(A). Then an employee is entitled to payment of two-thirds of their regular rate of pay for the number of hours they would normally be scheduled to work. *Id*. at (b)(2). When determining the regular rate of pay, Congress has directed employers to use the calculations in the FLSA. *Id*. at (b)(2)(B)(i)(I), citing 29 U.S.C. § 207(e). If an employer fails to provide paid leave under the EFMLEA, then, it has failed to pay wages required by the FLSA. And for the same reasons as the EPSLA, when the failure results from reliance on a valid administrative regulation, there can be no liability.

Bringing this full circle, if Plaintiff had a claim against Defendant for its failure to provide paid leave under the FFCRA, it was one for failure to pay minimum wages under the FLSA. But the Portal-to-Portal Act expressly immunizes employers from such claims "if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Secretary of

Labor. 29 U.S.C. § 259(a). If Defendant complied with the procedural requirements, the defense is available here.

The Court finds that Defendant has done enough to avail itself of the reliance defense. In its answer, Defendant "admits that it told Plaintiff that her position was exempt from the FFCRA under guidance provided by the Department of Labor." (ECF No. 8 at 3). And, Defendant pled, as an affirmative defense, that "Plaintiff's position is a position that is exempt as a medical provider under the FFCRA." (*Id*. at 8). This satisfies the pleading requirement. *See Nigg v. U.S. Postal Serv.*, 829 F. Supp. 2d 889, 908–09 (C.D. Cal. 2011) (allowing defendant to raise § 259 defense at summary judgment stage where plaintiff was not prejudiced).

The Court also finds that there are no genuine issues of material facts on Defendant's reliance. The issue of good-faith reliance is a pure question of fact. *E.E.O.C. v. Baltimore and Ohio R. Co.*, 557 F. Supp. 1112, 1122 (D. Mary. 1983). That said, Plaintiff does not challenge Defendant's assertion of good faith. Instead, she admits that Defendant was an exempt employer under the April Rule. (ECF No. 28 at 4). And rather than dispute Defendant's assertion of good-faith reliance on the April Rule, Plaintiff argues that such reliance "does not provide an escape hatch" to Defendant. (*Id*.). As discussed above, the Court disagrees.

The Court sympathizes with both parties. Defendant appropriately relied on the only rule available to it when it decided Plaintiff's eligibility for paid leave under the FFCRA. Plaintiff, also appropriately, believes that she was always eligible for leave under the properly enacted standard. But Congress has decided that this tie must go to Defendant, and the Court is in no position to disagree. Defendant cannot be held liable for interfering with Plaintiff's rights under the FFCRA, and summary judgment will be entered on that claim.

C. ***Defendant is not Liable under the FLMA, as Plaintiff Failed to Demonstrate the Existence of a Serious Health Condition***

As noted above, the first step in establishing a claim for FMLA interference is to prove that you are eligible for the statute's protections. An employee is entitled to FMLA leave if she takes the leave "in order to care for the . . . daughter . . . of the employee, if the . . . daughter . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). A "serious health condition" under the FMLA is "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). To survive summary judgment, Plaintiff needs to show that her daughter's mental and behavioral issues fall into one of these categories. *See, e.g.*, *Mattys v. Wabash Nat.*, 799 F. Supp. 2d 891 (N.D. Ind. 2011).

The record shows that the first, and perhaps only, documented reference to Plaintiff's daughter's conditions is in the April 21, 2020, email where Plaintiff claimed that her daughter was having "serious behavior issues," and had been diagnosed with ADHD, anxiety disorder, impulsive behavior, and sleep disturbances. It does not appear that Plaintiff ever provided Defendant with any documentation supporting these claims. Plaintiff argues that she did not provide the documentation because Defendant never asked for it. (ECF No. 29 at 8).

Plaintiff's explanation for not providing the documentation to Defendant may be true, but that does not relieve her of demonstrating the existence of a serious health condition now. The Court has reviewed the record and finds that Plaintiff has failed in this task. No medical records have been designated. The closest Plaintiff gets to describing the treatment her daughter received is in her interrogatory responses. There, she states that she intends to call Dr. Mark Souder to testify at trial that she "needed FMLA leave to care for [her] daughter during the Covid-19 pandemic." (ECF No. 29-3 at 121). Other than this conclusory reference to a doctor's expected

testimony, and a list of diagnoses, the Court has no information about the daughter's medical condition.

This scant information is not enough to carry Plaintiff's burden. Because there is no reference to the daughter requiring "inpatient care in a hospital, hospice, or residential medical care facility," the Court assumes that the claim of a serious health condition is based on the daughter's need for continuing treatment. Federal regulations impose strict requirements on claimants trying to establish "continuing treatment." For instance, for chronic conditions, a claimant must show that the condition:

> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c). Similarly stringent requirements are in place for four other categories of conditions. *Id.* at (a)-(e). Taken as a whole, these regulations show that a mere diagnosis is not enough to establish a serious health condition for the FMLA. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827 (7th Cir. 2012) (informing employer of father's serious cancer diagnosis not enough to put employer on notice of FMLA request).

Plaintiff's affidavit cannot fill the gap. A party's own statements cannot establish a serious health condition under the FMLA. *Mason v. St. Vincent Hosp. and Health Care Ctr.*, 2004 WL 3242339, at *6 (S.D. Ind. Nov. 8, 2004) (collecting cases). Instead, a party must submit evidence "provided by health care professionals and treating physicians" to meet their burden. *Id.* at *7. No such evidence is in the record.

Without evidence of a serious health condition, Plaintiff cannot make out a prima facie case that she was entitled to FMLA leave. And if Plaintiff cannot show she was entitled to FMLA leave, she cannot prevail on her claim of FMLA retaliation. Thus, summary judgment must be entered in Defendant's favor on the FMLA interference claim.

**D.**     ***Plaintiff Cannot Prove an Adverse Employment Action to Support a Retaliation Claim***

Finally, Plaintiff alleges that she was retaliated for asserting her rights under the FMLA and the FFCRA. To establish a retaliation claim, Plaintiff must present evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 824 (7th Cir. 2011). The parties agree that Plaintiff can show the first element through her request for leave. The debate exists as to the other two elements.

After reviewing the record, the Court finds no evidence of an adverse employment action. Plaintiff presents three instances of what she believes was adverse action: (1) Pearce telling her that she was not guaranteed to return to her position after her leave concluded; (2) accusations of work performance issues during the phone call when she requested leave; and (3) failure to pay leave under the FFCRA. (ECF No. 28 at 8). The Court finds that none of these meet the definition of an adverse employment action under federal law.

"Adverse employment actions for purposes of the federal antidiscrimination statutes generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011). None of Plaintiff's

proffered offenses fall into these categories. Instead, Plaintiff's claims are either extensions of her interference claims or the kind of inconvenience that will not support a claim for retaliation.

Taking the first and third instance first, Plaintiff is effectively repeating her interference claim. She argues that a return to her position after leave was "a substantive benefit under the FMLA." (ECF No. 28 at 8). She further argues that her request for paid leave was "inappropriately disputed and never paid." In essence, Plaintiff is claiming that the retaliation for her requesting FMLA/FFCRA leave was the denial of that leave. While this argument is creative, it is not the law. A denial of a request for FMLA leave does not constitute an adverse employment action for the purposes of FMLA retaliation. *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F.Supp.3d 585, 594 (E.D. Penn. 2017). If it did, "such reasoning would result in a claim for unlawful retaliation every time a request for accommodation, reasonable or not, is denied." *Id*. at 593.

The comments about her work performance fare no better. "Generally, negative employment evaluations, reprimands, or criticism are not considered materially adverse employment actions. Only when a plaintiff shows that these categories of conduct led to significant job-related consequences would they be considered materially adverse employment actions." *Walthour v. Potter*, 2010 WL 1931304, at *7 (C.D. Ill. May 13, 2010) (collecting cases). Plaintiff does not allege, nor can she point to, any job-related consequences that flowed from the negative comments. Rather, she was returned to an equivalent job upon her return from leave and has even been promoted in the meantime. These comments may have been distressing, but they are not legally actionable.

With nothing else to point to, Plaintiff cannot show that Defendant took a materially adverse employment action against her in response to her request for leave. This dooms her retaliation claim. Defendant is entitled to summary judgment in this claim as well.

**III.     Conclusion**

For these reasons, Defendant's motion for summary judgment (ECF No. 18) is GRANTED. The Clerk is directed to enter judgment for Defendant and against Plaintiff.

SO ORDERED on June 16, 2022.

                                        s/ *Holly A. Brady*
                                        JUDGE HOLLY A. BRADY
                                        UNITED STATES DISTRICT COURT